UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

Edward Mejia

   v.                                    Civil No. 12-cv-449-JD

William E. Smith, et al.

O R D E R

Edward Mejia, who is also known as Jose Luis Maldonado, brought a civil rights action against a federal judge, the warden and officers at the Wyatt Detention Center, and unnamed United States Marshals, arising from events that occurred in February of 2011 during his trial on drug charges. The named Wyatt Detention Center defendants, Warden Bryan Murphy, Captain Samuels, Sargent Santos, Sargent Cloud, and Officer Pagent ("defendants"), move to dismiss the claims against them.[1] Mejia did not file a response to the motion.

### Background

Mejia does not provide background allegations for his claims in the complaint, which arose from events during his criminal

---

[1] Mejia also brings a claim against a Wyatt Detention Center employee identified only as "Unknown Rank of Major" in Count II. The defendants' motion to dismiss is deemed to include the claim against that unknown defendant.

trial in <u>United States v. Maldonado</u>, 09-cr-71-S (D.R.I. 2009). The criminal case was brought against Mejia under his other name, Jose Luis Maldonado.

In that case, Mejia was charged in six counts with drug trafficking and possession of firearms in furtherance of a drug trafficking crime. The case was assigned to Judge William E. Smith. Jury selection for the trial was held on February 8, 2011, and the trial began on February 22, 2011.

On the first day of trial, Judge Smith was notified by the Marshal Service that Mejia refused to leave his cell at the Wyatt Detention Facility. Judge Smith asked defense counsel to go to Wyatt to explain to Mejia that the trial would proceed. Defense counsel and a United States Marshal discussed the matter with the court and the prosecutors by telephone from Wyatt. Counsel and the marshal explained that Mejia was extremely agitated and that he refused to speak with counsel. The marshal also said that Mejia refused to get dressed or leave his cell that morning when the marshal attempted to transport him to the court for trial. Counsel represented to the court that Mejia was mentally competent to stand trial.

The deputy chief of the Marshal Service arranged for a telephone connection at Wyatt so that Mejia could participate in the hearing with the court. Mejia refused to cooperate with that

arrangement. Mejia was brought into the conference room for the telephone conference, against his will, and instructed counsel not to speak on his behalf.

Judge Smith explained that the trial was going to proceed despite Mejia's refusal to come to the courthouse and that the trial would begin that afternoon. Judge Smith also told Mejia that he was represented by counsel. Mejia objected to his current counsel and said that he had been illegally taped by the prosecutor. Judge Smith told Mejia that the recording would not be used at trial and that counsel would continue to represent him. Mejia responded that he did not like counsel and did not want them to represent him. Judge Smith stated that Mejia's choice was to proceed with counsel or to represent himself but that the trial would begin that afternoon. Judge Smith instructed that if Mejia refused to attend trial, one of his lawyers was to come to the courthouse and the other was to stay with Mejia at Wyatt. The judge and the marshals discussed the means of transporting Mejia to the courthouse or providing a remote access to the trial at Wyatt. The marshal's opinion was that Mejia would not willingly do either.

When proceedings resumed that afternoon, the remote access was working at Wyatt but Mejia refused to be present. The

marshal reported that Mejia was undressed in his cell, wrapped in a blanket. The trial was recessed for the day.

On the second day of trial, Mejia refused to participate, and by the middle of the afternoon, Judge Smith let the jury go home. After the jury left, the judge summarized the events of that morning on the record. Mejia had declared that he would not come to court and was found in his cell that morning covered in feces and urine. He also claimed that the lawyer that he wanted to represent him had come to Wyatt the night before and told him not to go to court. The named lawyer denied that had occurred.

The chief deputy then described the marshals' attempt to get Mejia to the courthouse. After Mejia was cleaned up and transported to the "sallyport" of the courthouse, he refused to get out of the vehicle. The deputy marshals attempted to remove him, and he resisted by kicking one of the deputies. In the deputies' efforts to restrain Mejia and remove him from the vehicle, Mejia bumped his head. Mejia was taken to the hospital, where an examination showed that he had a broken nose. Although Mejia was verbally abusive to the hospital staff and the deputy marshals, he did not physically resist. After being treated at the hospital, Mejia was returned to Wyatt. Plans were made for transporting Mejia to the courthouse the next day and for contingencies if he resisted.

On the third day of trial, February 24, Mejia was transported to the court. The lawyers representing him informed the court that Mejia wanted them to withdraw. After the lawyers addressed the court, Mejia himself explained why he lacked confidence in counsel. Another lawyer, who Mejia wanted to have represent him, also spoke. Judge Smith ruled that the defense lawyers could not withdraw, noting that the stated issues had been resolved by court decisions, that Mejia was being represented by the fourth group of defense counsel, that the lawyers were exceedingly capable, and that any change in representation would delay the trial when the case was more than two years old and the trial had already begun. Judge Smith asked Mejia if he wanted the two lawyers to continue to represent him or if he wanted to proceed by representing himself with the two lawyers as standby counsel.

Mejia, speaking for himself, informed the court of his mental health issues and treatment. Judge Smith responded that the question of his competence to stand trial had been thoroughly considered and that the court had determined that Mejia was competent. Mejia persisted, arguing that he wanted to have an evaluation and that he had been diagnosed with serious mental illness. Judge Smith then reminded Mejia that the decision he had to make was how to proceed in the trial.

5

In response, Mejia said that he did not feel competent for the trial. He continued, "So I really don't think I'm going to take part in anything that's going on here so I prefer to be taken away. I don't want to be here." Judge Smith asked Mejia if he wanted to be taken away, and he responded that he did not want to be there because it was too much for him. The judge then explained that Mejia was not going to stop the trial and that it was in Mejia's best interest to let his lawyers represent him. Mejia repeated that he really did have problems.

Judge Smith asked Mejia if he would behave in front of the jury, and Mejia responded that he could not guarantee that he would. One of Mejia's lawyers stated that it was in the court's discretion whether to remove Mejia from the courtroom, based on his behavior over the past two days and his statement that he might not be able to behave in the courtroom. The other defense lawyer said that it would be better to have Mejia present.

Judge Smith decided that the trial would go forward with Mejia in the courtroom with defense counsel and stated that Mejia was capable of behaving appropriately. When Mejia replied that a qualified doctor should decide whether he could proceed with trial, the judge told him that the issues had been addressed, that Mejia had been found competent, and that Mejia would have to be quiet and speak only through counsel. Despite Mejia's

protests that he needed a mental evaluation, the trial resumed, and the jury was brought into the courtroom. The trial continued to completion on February 25. The jury found Mejia guilty on all counts.

In his complaint, Mejia alleges that he was placed on suicide watch on a doctor's orders because of a mental condition. He also alleges that he was "under a Psychiatrist or Psychologist care for treatment." He states: "United States District Judge, Defendant William E. Smith, over a doctors care and order of commitment to hospital 24 hour suicide watch." He further states: "District Court Judge William E. Smith ordered the Wyatt Detention Center without the treating Physicians permission or signature order, to take the Plaintiff out of suicide watch and to bring him to the Courthouse [sic]."

## Standard of Review

The analysis of a motion to dismiss proceeds through three steps. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernandez v. Foruno-Burset, 640 F.3d 1, 12 (1st Cir. 2011)). First, the court must ignore any allegations in the complaint "that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz, 669 F.3d at 55. Second, the properly pleaded facts must be taken

as true, with all reasonable inferences drawn in favor of the plaintiff.  Id.  Third, the court considers the appropriate allegations and inferences and determines whether "they plausibly narrate a claim for relief."  Id.

## Discussion

Counts II, III, IV, V, VI, and VII are alleged against the Wyatt defendants.[2]  In Counts II, III, IV, and V against the Major, the Warden, and Captain Samuels, Mejia alleges that each defendant had knowledge of and acquiesced in removing him from suicide watch without a doctor's permission, that the defendant knew he was placed on suicide watch because of "instability of the mind," that the defendant violated protocol and policy for suicide watch inmates, and that because of those actions or omissions Mejia was "beaten, brutalized with excessive force causing trama [sic] and injuries on February 23rd, 2011."  Counts VI and VII against Officer Cloud and Officer Pagent are similar but are worded slightly differently.  Mejia contends that the defendants violated his Eighth Amendment right to be free of cruel and unusual punishment.  The defendants move to dismiss the

---

[2]Count I is alleged against Judge Smith, and Counts VIII through XI are alleged against "unknown" marshals.

8

claims against them on the grounds that Mejia has not stated a claim for violation of the Eighth Amendment.

On February 23, 2011, Mejia was on trial for drug offenses and therefore had not yet been convicted of those offenses. If he were being held at the Wyatt Detention Center as a detainee, the Fourteenth Amendment would apply, while the Eighth Amendment would apply if he were being held as a convicted prisoner. Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 n.21 (1st Cir. 2011). Because the standard is the same under the Eighth and Fourteenth Amendments for purposes of Mejia's claims, his status need not be resolved to decide the motion. Id.

Civil rights violations by state employees are actionable under 42 U.S.C. § 1983. Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 765 n.9 (1st Cir. 2010). To state a claim of an Eighth Amendment violation, the plaintiff must allege facts to show that the defendant was deliberately indifferent to a substantial risk of harm to the plaintiff. Ramos v. Patnaude, 640 F.3d 485, 490 (1st Cir. 2011). "[T]hat is, that [the defendant] actually understood that such a substantial risk existed and was actually indifferent to it in failing to take appropriate mitigating action." Id.

Mejia alleges that each of the defendants knew or should have known that he had been placed on suicide watch and that

9

removing him from suicide watch without a doctor's permission violated the policy and protocol of Wyatt. He then alleges: "This caused the Plaintiff to be beaten, brutilized [sic] with excessive force causing trama [sic] and injuries on February 23rd, 2011."

As the defendants contend, Mejia's allegations show only that the defendants allowed him to be transported to the court for his trial. If, as alleged, the defendants knew that Mejia had been placed on a suicide watch, that knowledge might support an inference that the defendants knew there was a risk that Mejia would hurt himself. Mejia, however, did not hurt himself.

Instead, Mejia was injured while he was resisting the deputy marshals' efforts to get him out of the transport vehicle at the courthouse. Mejia's allegations do not show or even suggest that the defendants had any knowledge of the circumstances that lead to Mejia's injuries. Further, the allegations do not support any connection between a suicide watch and Mejia's injuries.

Therefore, Mejia has not stated claims of Eighth Amendment violations against the defendants.

Conclusion

For the foregoing reasons, the defendants' motion to dismiss Counts II, III, IV, V, VI, and VII (document no. 28) is granted.

SO ORDERED.

*Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge
(Sitting by designation.)

December 17, 2012

cc: Edward Mejia, pro se
    Jeffrey K. Techentin, Esquire