UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

Edward Mejia, a/k/a Jose Maldonado

    v.                                 Civil No. 12-cv-449-JD

Robert Charette, et al.

O R D E R

Edward Mejia, who is also known as Jose Luis Maldonado but will be referred to as "Mejia", brought a civil rights action, arising from events that occurred during his trial on drug charges.[1] The remaining defendants, Supervisory Deputy United States Marshal Robert J. Charette, Deputy United States Marshal Justin Engen, Deputy United States Marshal Brian McDonald, and Deputy United States Marshal Joseph Murphy, move to dismiss or in the alternative for summary judgment on the claims against them, asserting that Mejia did not allege a claim for excessive force and alternatively that they are entitled to qualified immunity if the claims were properly alleged. Mejia objects, contending that the defendants used excessive force in extracting him from a transport van at the courthouse.

---

[1] The criminal case is United States v. Maldonado, 09-cr-71-S (D.R.I. 2009).

I.  Motion to Dismiss

The defendants move to dismiss the claims against them, contending that Mejia did not allege sufficient facts to support his claims.  Because the defendants filed their answer before filing the motion to dismiss, it is construed as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Shay v. Walters, 701 F.3d 76, 82 (1st Cir. 2012).

The court determined on preliminary review under 28 U.S.C. § 1915(e)(2) and § 1915A that Mejia stated excessive force claims against the four deputy marshal defendants, who then had not been identified.[2]  See Order, March 22, 2013, (document no. 37) at 4-5.  In conducting preliminary review, the court used the same standard that is applicable to a motion to dismiss or a motion for judgment on the pleadings.  See Hooker v. United States, 2014 WL 120659, at *2 (D.N.H. Jan. 13, 2014); Benbow v. Weeden, 2013 WL 4008698, at *2 (D.R.I. Aug. 5, 2013); Villar v. Buttermore, 2013 WL 3945914, at *5 (D.N.H. July 31, 2013).  The defendants move to dismiss the claims on the grounds that Mejia fails to state a claim of excessive force, without addressing the contrary

---

[2]An excessive force claim against federal officers, such as the deputy marshals named in this case, proceeds under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  See Soto-Torres v. Fraticelli, 654 F.3d 153, 155 (1st Cir. 2011).

2

determination on preliminary review. See Mandeville v. Anderson, 2007 WL 4287724, at *4 (D.N.H. Dec. 4, 2007).

To the extent a motion to dismiss is cognizable in these circumstances, which is unclear, the defendants' motion fails for the reasons stated in the order on preliminary review.

II. Motion for Summary Judgment

The defendants move for summary judgment on the ground that they are entitled to qualified immunity. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue is one that could be resolved in favor of either party, and a material fact is one that has the potential of affecting the outcome of the case." Jakobiec v. Merrill Lynch Life Ins. Co., 711 F.3d 217, 223 (1st Cir. 2013) (internal quotation marks omitted). "To be genuine, a factual dispute must be built on a solid foundation--a foundation constructed from materials of evidentiary quality." Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013).

The two-part qualified immunity analysis asks "whether (1) the facts alleged show the defendants' conduct violated a constitutional right, and (2) the contours of this right are 'clearly established' under then-existing law so that a reasonable officer would have known that his conduct was

3

unlawful."[3]  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 97 (1st Cir. 2013) (internal quotation marks omitted).  In considering qualified immunity, the court need not address each step but instead may move ahead to determine whether a reasonable officer would have known that his conduct was unlawful.  Asociacion De Periodistas De P.R. v. Mueller, 680 F.3d 70, 81 (1st Cir. 2012).

"Excessive force claims, like most other Fourth Amendment issues, are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred."  Saucier v. Katz, 533 U.S. 194, 207 (2001); accord Asociacion De Periodistas, 680 F.3d at 81.  "[Q]ualified immunity can protect officers from litigation based on misjudgments about where lies the 'sometimes hazy border between excessive and acceptable force.'"  Asociation De Periodistas, 680 F.3d at 81 (quoting Saucier, 533 U.S. at 206).  For that reason, an officer will be protected by qualified immunity if he "'reasonably, but mistakenly, believed that a suspect was likely to fight back . . . [and] us[ed] more force than in fact was needed.'"  Id. (quoting Saucier, 533 U.S. at 205).

In this case, the events in question occurred during Mejia's criminal trial.  The defendants have provided their declarations, declarations of other officers involved, DVDs of footage taken by cameras in the sallyport of the courthouse, Mejia's medical

---

[3]The same standard for qualified immunity applies in Bivens suits as in civil rights actions under 42 U.S.C. § 1983. Hernandez-Cuevas, 723 F.3d at 97 n.6.

4

records, and other evidence in support of summary judgment. In opposition to summary judgment, Mejia submitted two identical copies of his own declaration, copies of two reports from the Wyatt Detention Facility, and part of the declaration of Cory Cloud, an officer at the Wyatt Detention Facility.

Mejia was being held at the Wyatt Detention Facility pending trial. On the first day of trial, Mejia refused to leave his cell to be transported to the courthouse. He asserted that he did not want to be represented by his appointed counsel and wanted a different lawyer to represent him.[4] The judge was notified by United States Marshals. At the judge's request, defense counsel went to Wyatt to talk to Mejia and to explain that the trial would proceed whether he attended or not. Defense counsel and the marshal at Wyatt told the judge that Mejia was extremely agitated and refused to speak with counsel.

The deputy chief of the Marshal Service arranged for a telephone connection from Wyatt to the court so that Mejia could participate in a hearing to address the issue of representation. Mejia refused to cooperate but was brought to the conference room against his will. Mejia objected to being represented by his appointed counsel. The judge explained to Mejia that the trial would begin and that if he refused to attend, one of his lawyers would attend the trial and the other would stay with Mejia.

---

[4]Mejia had changed counsel four times previously.

The marshals told the judge that in their opinion Mejia would not be transported willingly to the court or participate by remote access at Wyatt. When the judge attempted to begin the trial, Mejia refused to leave his cell, and the marshal reported that Mejia was undressed and wrapped in a blanket. The judge informed the marshals that Mejia would be transported to the court for trial the next morning, and the Chief Deputy Marshal advised Supervisory Deputy Marshal Charette that extra security would be required.

The next morning Mejia again refused to leave his cell when ordered to do so. Mejia "smeared urine and feces all over [his] face and body." Mejia declarations, doc. no. 47, ¶ 3 & doc. no. 54, ¶ 3. Mejia also threw urine and feces at the officers attempting to remove him from his cell. Mejia was subdued, washed, dressed, and transported by van to the courthouse.

Deputy Marshals Murphy, McDonald, and Engen were briefed by Charette about the events that had occurred in extracting Mejia from his cell. They were told that Mejia was being transported to the courthouse and that they would receive Mejia when he arrived and escort him into court. The defendants went to the sallyport in the courthouse to wait for Mejia's arrival.

In the van, Mejia was shackled with leg irons and handcuffed in front. Although detainees are required to wear seatbelts during transport and are belted into the seat when they enter the van, they often remove the belt before arrival. Mejia was quiet during the ride to the courthouse.

When the van was inside the sallyport at the courthouse, the deputy marshals approached the passenger side double doors. Murphy asked about Mejia's behavior during the trip and was told that Mejia had been calm and quiet. The defendants state, supported by their declarations, that Murphy opened the doors to the compartment where Mejia was seated and ordered Mejia to get out of the van. Mejia did not respond or move. Murphy asked Mejia again to get out and again there was no response.

According to the defendants, Murphy got into the van, facing Mejia, and leaned toward Mejia, placing his left hand under Mejia's right shoulder to assist or carry Mejia out of the van. In response, Mejia stiffened and kicked his legs out, kicking Murphy in the groin and legs. Mejia pulled on Murphy's shirt and appeared to be lunging at Murphy with his mouth open, attempting to bite or hit Murphy with his head. Murphy fell against the side of the seating compartment.

When Murphy fell, McDonald saw Mejia rise from his seat over Murphy in a threatening manner. McDonald grabbed Mejia's leg shackles and yanked hard, knocking Mejia off of his feet and pulling him away from Murphy and out of the van. Mejia kicked and thrashed violently. Charette saw Mejia's legs thrashing and grabbed Mejia's legs and pulled. McDonald and Charette pulled Mejia out of the van, and he landed face down on the floor. The extraction process took eight seconds.

In the struggle, Mejia hit and injured his face. Engen administered first aid to Mejia and stopped the bleeding. EMTs

were called, and Mejia was transported to the hospital by ambulance.

Mejia offers two different versions of the extraction process. In his complaint, Mejia alleges that when the door to the van was opened, the marshal "grabbed [Mejia] snatching [him] from the van cuffed and shackled." Complaint, ¶ 40. He further states that when the marshal attempted to remove him he "instinctively went rigid." Id. After he "went rigid," the marshal "began to beat and brutalize" Mejia. Mejia alleges that he suffered injury to his nose, mouth, front teeth, and back.

In opposition to summary judgment, however, Mejia describes the incident differently. Mejia states in his declaration that he had been sprayed with mace to subdue him during the cell extraction process at Wyatt which irritated his eyes so that he could not open his eyes while being transported to the courthouse. He states that the van door opened rapidly and that he was "immediately attacked by a U.S. Marshal who began to punch me in my side." Declaration, doc. no. 54, ¶ 9. He further states that he "was then pulled out of the van by my leg shackles" and "was dragged out of the van on my stomach and face." Id. Mejia denies that anyone told him to get out of the van.

Mejia does not mention his action of "going rigid" in his declaration and instead states that he was punched before he made any movement. However, Mejia is bound by the factual allegations in his complaint, which are judicial admissions, absent a

8

satisfactory explanation for new and different facts. Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc., 976 F.2d 58, 61 (1st Cir. 1992); accord N. Am. Catholic Educ. Programming Found., Inc. v. Sprint Corp., 2006 WL 1207670, at *7 (D.R.I. May 2, 2006); see also Giddens v. Community Educ. Ctrs., Inc., --- Fed. Appx. ---, 2013 WL 5405503, at *7 (5th Cir. Sept. 27, 2013) (explaining doctrines of judicial estoppel and admissions which bind the party to statements made in the complaint that contradict later statements made to oppose summary judgment); Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (holding that allegations in a complaint are binding judicial admissions). Therefore, Mejia's attempt to create a factual dispute to avoid summary judgment by providing a different version of events in his declaration is unavailing. See Fin Brand Positioning, LLC v. Take 2 Dough Productions, Inc., 2012 WL 27917, at *5 (D.N.H. Jan. 5, 2012) ("'[T]he non-moving party cannot create a dispute concerning material facts by simply submitting an affidavit that contradicts his or her complaint, deposition testimony, or answers to interrogatories without providing an adequate explanation for that discrepancy.'") (quoting Toney v. Perrine, 2007 WL 2688549, at *1 (D.N.H. Sept. 10, 2007)).

 The events preceding Mejia's arrival at the sallyport of the courthouse provided ample grounds for the marshals to expect trouble from Mejia. When Mejia did not comply with two instructions to get out of the van, Murphy reasonably concluded

that he had to climb into the van to get Mejia out. Mejia then kicked Murphy and appeared to threaten him further. Even if the defendants were mistaken about Mejia's intent in "going rigid" and leaning over Murphy, they reasonably interpreted those actions as threatening. In response, to protect Murphy and to extract Mejia, McDonald and Charette pulled Mejia by his legs and shackles out of the van, and Mejia sustained injuries in the process.

Under the same circumstances, reasonable officers in the defendants' positions would have perceived a threat from Mejia and would have responded, reasonably, with at least the amount of force the defendants used. Therefore, the defendants are entitled to qualified immunity and are not liable under Mejia's excessive force claims.

## Conclusion

For the foregoing reasons, the defendants motion for summary judgment (document no. 42) is granted as to Counts VIII, IX, X, and XI, which are the only remaining claims in this case.

The clerk of court shall enter judgment and close the case.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge
(Sitting by designation.)

February 11, 2014

cc: Leslie D. Parker, Esq.
    T. David Plourde, Esq.
    Jeffrey K. Techentin, Esq.

10